IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Michael O'Neal,                                     Case No. 3:04CV7255

        Plaintiff

    v.                                                ORDER

Johns Manville Int'l, Inc.,

        Defendant

        This is an employment discrimination case in which plaintiff alleges he was terminated because of his race and his disability and in violation of the Ohio Civil Rights Act, R.C. § 4112.02 et seq. Jurisdiction over plaintiff's claims is proper pursuant to 28 U.S.C. § 1332.

        Pending are defendant's motion for summary judgment and defendant's motion to strike portions of Raymond Garcia's affidavit which plaintiff filed in support of his opposition to summary judgment.

**Background**

        From his hiring in 1986 to his termination on March 5, 2001, plaintiff, an African-American male, was employed by Johns Manville International, Inc. (Johns Manville) at its Waterville, Ohio facility. Before his termination, plaintiff worked as a machine chief which required him to operate and work with dangerous machinery.

On February 24, 2001, plaintiff reported to work on the midnight shift under the influence of alcohol. He had gone bowling with friends that evening and been drinking for several hours.

Foreman Todd Yeager suspected plaintiff had been drinking. Plaintiff admitted to drinking alcohol prior to reporting for work and asked to be sent home. Yeager denied plaintiff's request and insisted that plaintiff take a drug and alcohol test.

Yeager sent Dan Payne, another supervisor, to find a union representative. Payne located Bob Bengie, a union steward. Bengie also asked that plaintiff be sent home, but Yeager refused and insisted that plaintiff take a drug and alcohol test. Plaintiff refused to take the test and refused to take a taxi home.

Yeager called Raymond Garcia, a union committeeperson, to join the discussions. Plaintiff spoke to the union committee person and the union steward privately. The union representatives were uncertain as to the consequences of plaintiff's refusal to take the drug and alcohol test. However, the union representatives and plaintiff understood that if he refused to take a taxi home, he would be terminated.

Plaintiff continued in his refusal to take the test. Yeager responded by suspending plaintiff for insubordination and reporting to work while under the influence of alcohol and sent plaintiff home in a taxi.

The following Monday, plaintiff attempted to seek treatment for his alcoholism at Harbor Behavioral Healthcare. The agency declined to enroll plaintiff until his employment status at Johns Manville had been determined.

On March 5, 2001, Johns Manville held a hearing regarding plaintiff's suspension. At the hearing, plaintiff, who was represented by several union officials, admitted that he came to work under the influence of alcohol. Johns Manville terminated plaintiff at the conclusion of the hearing.

Johns Manville's safety and shop rules prohibit an employee from "[selling], us[ing], possess[ing], or being under the influence of any form of narcotic, depressant, stimulant, hallucinogen, alcoholic beverage, or marijuana while on Company premises or during working hours . . . ." (Doc. 28, Ex. E, G, J.) Johns Manville also has a written drug and alcohol policy which states that "an employee reporting to work under the influence of alcohol or other controlled substances shall be subject to discipline up to and including discharge." (*Id.*, Ex. D at 2.)

Defendant's policy additionally requires that a drug and alcohol test be administered "when there is a reasonable cause to suspect the presence of drugs or alcohol or other controlled substances in an employee's body." (*Id.*)

Defendant has not enforced this policy uniformly. Several employees, who have reported to work under the influence of alcohol or controlled substances, have been reinstated after serving a suspension and entering into an agreement with defendant, known as a Stipulation of Understanding. Other employees, who have been suspected of being under the influence, have been sent home without being required to submit to drug and alcohol tests or face any disciplinary action whatsoever. Still others caught with alcohol, marijuana, or other illegal drugs on company premises, violations that are grounds for immediate discharge, have faced no disciplinary action.

## Discussion

### 1. Motion to Strike

Defendant has moved to strike portions of Raymond Garcia's affidavit, which plaintiff produced in opposition to defendant's motion for summary judgment. Specifically, defendant requests that I strike

3

paragraphs 4, 6, 7, 9, 10, 11, and 13 in their entirety, the last sentence of paragraph 3, all but the first and last sentences of paragraph 5, and the first sentence of paragraph 8.

Defendant contends that these portions should be stricken because this particular testimony is not based on firsthand knowledge, but is based on speculation, hearsay, and his personal, subjective beliefs. Plaintiff argues that Garcia has firsthand knowledge of the events described in the affidavit and his statements are not hearsay, legal conclusions, or opinions.

For the following reasons, plaintiff's motion to strike shall be granted in part and denied in part.

"In ruling on motion for summary judgment," it's axiomatic that I "must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant." *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962). Within that framework, "the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated." *Id.* (citing 6 Moore's Federal Practice Par. 56.15(3), p. 2123-26).

Defendant complains that the Garcia affidavit "refers to several alleged incidents without offering any indication of where or how Garcia gained knowledge of the events" and fails to include "any facts that support his personal knowledge of the events to which he refers." Essentially defendant contends that plaintiff's attorney could have drafted the document more artfully.

While the affidavit technically may have been drafted more clearly, it sets forth Garcia's basis for personal knowledge of the statements contained in the affidavit: "I am a steward of the Local 20 union at the Johns Manville Waterville complex. I was secretary of the union at the time of the events of February 24, 2001. Unless otherwise noted, I have personal knowledge of the facts stated herein." (Doc. 35, Ex. 5 at 1.)

4

As an employee of Johns Manville, a union steward, and a union secretary, Garcia presumably has the opportunity to view and be involved in many of the incidents described in the affidavit. Therefore, I decline to strike any portions of the affidavit based on lack of personal knowledge.

I will, however, strike the fifth sentence in paragraph 5 ("When Johns Manville finally disciplined Chris Szymanski, I believe they did a Stipulation of Understanding with him") as based on speculation; the first sentence of paragraph 8 ("Johns Manville continues to apply a lenient Drug and Alcohol Policy to white employees") as improperly stating a legal conclusion; paragraph 10 in its entirety as an expression of opinion as to which Mr. Garcia has not been shown to be qualified to testify; and paragraph 14 in its entirety as an expression of a legal opinion that is not a proper subject for testimony.

## 2. Motion for Summary Judgment

Defendant seeks summary judgment on the grounds that plaintiff cannot establish a prima facie case of disability discrimination or race discrimination.

### a. Prima Facie Case of Disability Discrimination

Defendant contends that plaintiff's disability discrimination claim fails because the plaintiff: 1) cannot prove that he is "disabled" or that Johns Manville had knowledge of his alleged disability (i.e, alcoholism); 2) was discharged for a legitimate, nondiscriminatory reason (i.e, violating company rules and policies); and 3) has no evidence that this legitimate, nondiscriminatory reason is pretextual.

Ohio Revised Code § 4112.02 prohibits disability discrimination in employment. The section specifically states that it shall be an unlawful discriminatory practice: "[f]or any employer, because of the . . . disability . . . of any person, to discharge without just cause . . . or otherwise discriminate against that

5

person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." R.C. § 4112.02(A).

To establish a prima facie case of disability discrimination, a plaintiff must demonstrate: "(1) that he or she was handicapped, (2) that an adverse employment action was taken by an employer, at least in part, because the individual was handicapped, and (3) that the person, though handicapped, can safely and substantially perform the essential functions of the job in question." *Hood v. Diamond Prods.*, 74 Ohio St. 3d 298, 302 (1996) (citing *Hazlett v. Martin Chevrolet, Inc.*, 25 Ohio St. 3d 279, 281 (1986)).

Once the plaintiff establishes a prima facie case of disability/handicap discrimination, the burden shifts to the employer to set forth a legitimate, nondiscriminatory reason for the action taken. *Id*. (citing *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civ. Rights Comm.*, 66 Ohio St. 2d 192, 197 (1981)). If the employer establishes a nondiscriminatory reason, then the burden shifts back to the employee to demonstrate that the employer's stated reason was a pretext for impermissible discrimination. *Id*.

### i. Disability

Disability is defined in R.C. § 4112.01(A)(13) as:

a physical or mental impairment that substantially limits one or more major life activities, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of a physical or mental impairment; or being regarded as having a physical or mental impairment.

Plaintiff notes that alcoholism is listed as one of the "physical or mental impairments" set forth in R.C. § 4112.01(A)(16)(a)(iii).[1] A physical or mental impairment, standing alone however, does not

---

[1] Section 4112.01(A)(16)(a)(iii) states that "physical or mental impairment" includes any of the following:

6

necessarily constitute a disability under the statute. *Fitzmaurice v. Great Lakes Computer Corp.*, 155 Ohio App. 3d 724, 727 (Ohio Ct. App. 2004). To be disabled under the statute, plaintiff must also demonstrate that his impairment "substantially limits" one or more "major life activities." R.C. § 4112.01(A)(13).

Under federal law,[2] the term "substantially limits" is defined in 29 C.F.R. § 1630.2(j) as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

"Major life activity" includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Plaintiff has not demonstrated that his alcoholism "substantially limits" one or more "major life activities." Plaintiff admits that despite his alcoholism, he is able to engage in basic daily activities and that his alcoholism had never interfered with his work prior to the day he arrived at work under the influence.

---

Diseases and conditions, including, but not limited to, orthopedic, visual, speech, and hearing impairments, cerebral palsy, autism, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, human immunodeficiency virus infection, mental retardation, emotional illness, drug addiction, and alcoholism.

[2] Because Ohio modeled its statute after the federal Americans with Disabilities Act (ADA), it is appropriate for me to look to federal regulations and case law for instruction. *City of Columbus Civ. Serv. Comm'n v. McGlone*, 82 Ohio St. 3d 569, 573 (1998) ("We can look to regulations and cases interpreting the federal Act for guidance in our interpretation of Ohio law.") (citing *Little Forest Med. Ctr. v. Ohio Civ. Rights Comm.*, 61 Ohio St. 3d 607, 609-10 (1991)).

7

In the alternative, plaintiff argues that he qualifies as having a disability because Johns Manville regarded him as being disabled. An individual is regarded as having such an impairment when he or she:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has [no physical or mental impairment] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2; *see also Fitzmaurice*, 155 Ohio App. 3d at 728.

Plaintiff contends that "[d]efendant acted as though plaintiff's alcoholism limited his major life activity of working even though Plaintiff had previously demonstrated an ability to complete the essential functions of his job despite his alcoholism." (Doc. 35 at 12.) Defendant counters by arguing that defendant had no knowledge of plaintiff's alcoholism.

Plaintiff bases his claim that defendant necessarily regarded him as an alcoholic on statements made at his termination hearing. During the hearing, plaintiff informed defendant that he had an alcohol problem and was seeking treatment. In response, management stated: "If Mike would have come forward prior to this incident, things could have been different." (Doc. 35 at 12-13.) Management also commented that they hoped plaintiff would seek treatment. "I hope you get treatment." (*Id*. at 12, 14.)

Despite these statements, no other evidence in the record shows that plaintiff is an alcoholic or that defendant regarded him as an alcoholic. Plaintiff had been employed at Johns Manville for fifteen years, and during that time, had no prior incidents of reporting for work while under the influence of alcohol. Based on plaintiff's work record and the absence of any other evidence indicating that the defendant might have

8

been aware that he abused alcohol, no rational jury could find defendant that plaintiff was an alcoholic or that defendant regarded him as such.

### ii. Ability to Safely and Substantially Perform the Job

There is, as noted, nothing in the record to show that plaintiff, despite his alleged alcoholism, cannot safely and substantially perform the essential functions of the job in question. Plaintiff had been employed at Johns Manville for fifteen years. Until the incident on February 24, 2001, plaintiff had an excellent work record and no prior history of reporting for work while under the influence of alcohol. There is no evidence in the record that plaintiff's alleged alcoholism had interfered with his work prior to the incident in question.

### iii. Terminated As a Result of the Disability

"[T]here is a distinction between taking an adverse job action for unacceptable misconduct and taking such action solely because of a disability, even if the misconduct is 'caused' by the disability." *Martin v. Barnesville Exempted Village Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 (6th Cir. 2000) (citing *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 847 (6th Cir. 1995)). In other words, under the ADA, "an employer may hold an alcoholic employee to the same performance and behavior standards to which the employer holds other employees even if [the] unsatisfactory performance is related to the alcoholism . . . ." *Id*.

In this case, plaintiff was terminated after he reported to work while under the influence of alcohol and refused to submit to a test mandated by company policy. The record does not support a finding that plaintiff was terminated as a result of the disability, rather than his conduct. Ohio law, like the ADA, does not protect plaintiff from his own bad judgment in coming to work intoxicated.

9

### b. Prima Facie Case of Race Discrimination

Plaintiff also claims that Johns Manville discriminated against him based on race in violation of R.C. § 4112.02(A). Defendant contends that plaintiff's claim fails because: 1) plaintiff cannot show that a comparable non-protected person was treated better; and 2) defendant terminated plaintiff for a legitimate non-discriminatory reason;

The *McDonnell Douglas/Burdine*[3] formula applies to race discrimination claims under Ohio law. *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.*, 66 Ohio St. 2d 192, 197 (1981).

Under *McDonnell Douglas/Burdine*, the plaintiff must either present direct evidence of discrimination or circumstantial evidence that would allow an inference of discriminatory treatment. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir.2003) (en banc).

Where the plaintiff does not have direct evidence of discrimination, courts use a burden-shifting approach. *Burdine,* 450 U.S. at 252-53 (citing *McDonnell Douglas Corp.,* 411 U.S. at 802, 804). Because plaintiff has not presented any such direct evidence, I must apply the *McDonnell Douglas/Burdine* formula.

To establish a prima facie case of discrimination under *McDonnell Douglas/Burdine*, the plaintiff must prove that he was: 1) a member of a protected class; 2) discharged; 3) qualified for the position; and 4) replaced by a person outside the class. *Mitchell*, 964 F.2d at 582-83. The prima facie requirement "is

---

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

not onerous," *Burdine,* 450 U.S. at 253, and poses "a burden easily met." *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir. 1987).

When analyzing a prima facie case, I may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action. *Wexler*, 317 F.3d at 574. To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination. *Id*. *See also Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 660-61 (6th Cir. 2000) ("[W]hen assessing whether a plaintiff has met her employer's legitimate expectations at the prima facie stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason 'produced' by the defense as its reason for terminating plaintiff.").

### i. Membership in a Protected Class and Discharged

In the instant case, plaintiff meets his burden under the first two requirements. First, plaintiff is an African-American, and therefore is a member of a protected class. Second, it is undisputed that plaintiff was terminated from his position as a machine chief at Johns Manville.

### ii. Qualifications for the Position

Plaintiff meets the third factor in that he was qualified for the position. Defendant contends that plaintiff was not qualified for the position because plaintiff arrived at work under the influence of alcohol and therefore was not "qualified" or fit to operate a forklift or work around machinery. I disagree.

Plaintiff had been employed at Johns Manville for fifteen years. Until the incident on February 24, 2001, plaintiff had an excellent work record and no disciplinary warnings with the exception of a few minor attendance issues. There is no evidence in the record that indicates anything other than that plaintiff had the

11

skills to do his job and that he did his job and did it well. I am not convinced that the incident on February 24, 2001, somehow rendered plaintiff unqualified for his position – a position he was qualified to fill on the day prior as well as any day following the incident.

### iii. Replaced by One Outside the Class/ Comparable Non-Protected Person Treated Better

Last, plaintiff must satisfy the fourth prong – that he was replaced by a person outside the class. Plaintiff has not presented any evidence regarding his replacement, but instead argues that non-minority employees were treated differently. Plaintiff contends that non-minority employees who have violated defendant's drug and alcohol policy have been given the opportunity to continue their employment after entering into Stipulation of Understanding agreements.

"A plaintiff can also make out a prima facie case by showing, in addition to the first three elements, that a comparable non-protected person was treated better." *Mitchell*, 964 F.2d at 582. Thus, to be successful on his claim, "plaintiff must produce evidence which at a minimum establishes (1) that he was a member of a protected class and (2) that for the same or similar conduct he was treated differently than similarly-situated non-minority employees." *Id.* (citing *Davis v. Monsanto Chem. Co.*, 858 F.2d 345 (6th Cir. 1988); *Long v. Ford Motor Co.*, 496 F.2d 500 (6th Cir. 1974)).

Defendant, relying very heavily on the *Mitchell* case, argues that to compare plaintiff's treatment to that of other employees, "plaintiff must show that the 'comparables' are similarly-situated in all respects." *Mitchell*, 964 F.2d at 583. Thus, to be

> "similarly-situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

12

*Id*.

Defendant contends that plaintiff has failed to make this showing.

The Sixth Circuit, however, has clarified its *Mitchell* decision and stated: "Although this statement appears to invite a comparison between the employment status of the plaintiff and other employees in every single aspect of their employment, *Mitchell* has not been so narrowly construed." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). The Court continued:

> *Mitchell* itself only relied on those factors relevant to the factual context in which the *Mitchell* case arose – an allegedly discriminatory disciplinary action resulting in the termination of the plaintiff's employment. . . . [While] [t]hese factors generally are all relevant considerations in cases alleging differential disciplinary action, [c]ourts should not assume . . . that the specific factors discussed in *Mitchell* are relevant factors in cases arising under different circumstances, but should make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee. The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated;" rather, as this court has held in *Pierce* [*v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994), the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the relevant aspects."

*Id*. (citation and footnote omitted).

Plaintiff contends that several non-minority individuals were "treated better" than he in that, though each was caught under the influence of alcohol or drugs, each was reinstated after a disciplinary suspension and entering into Stipulation of Understanding agreements.

In 1994, Johns Manville suspended Vernon Seel, a non-minority production attendant, for coming to work while "intoxicated." Johns Manville permitted Seel to return to work after entering into a Stipulation of Understanding in which he agreed to complete a rehabilitation program and submit to random drug testing.

In 1996, Johns Manville suspended Mike Tinney, a non-minority production attendant, for failing to pass a drug test which was given after Tinney was injured at work. Johns Manville reinstated Tinney after he entered into a Stipulation of Understanding in which he agreed to complete a rehabilitation program and submit to random drug testing.

In December 2000, Tinney was suspended again for committing an "unsafe act and being under the influence of a controlled substance during working hours." (Doc. 35, Ex. 1 at 5-7.) Tinney was again permitted to return to work after entering into a Stipulation of Understanding in which he agreed to submit to random drug testing. Plaintiff has also produced evidence that since plaintiff's discharge, defendant caught Tinney with marijuana, but did not terminate him.

In 1999, Chris Szymanski, a non-minority electrician, was disciplined for "sleeping during working hours," "being under the influence of any form of narcotic, depressant, stimulant, hallucinogen, alcoholic beverage or marijuana, of [sic] Company premises or during working hours," and "insubordination – refusal to submit to drug/alcohol test." (Doc. 35, Ex. 6 at 1-2.) After a suspension and entering into a Stipulation of Understanding in which he agreed to undergo counseling and submit to additional drug testing, Szymanski was reinstated. Later that same year, Szymanski was terminated for violating the Stipulation of Understanding.

Plaintiff has also submitted evidence that Szymanski "often came to work intoxicated, so much that he was commonly known in the plant as "Bud Light." Despite this behavior, defendant allegedly did not discipline Szymanski for quite some time.

14

Plaintiff has produced evidence that an employee by the name of Greg Vogel, a non-minority, also arrived at work smelling of alcohol. Two foreman observed this behavior, but did not enforce Johns Manville's drug and alcohol policy.

On another occasion, Dick Gilley and Matt Papac, two non-minority employees, were allegedly in the electric shop with open containers of beer. A supervisor observed this behavior, but did not enforce Johns Manville's drug and alcohol policy.[4]

On March 13, 2004, Gary Michalski, a non-minority employee, arrived at work smelling of alcohol. His supervisor observed Michalski and asked to speak to him. Instead of enforcing Johns Manville's drug and alcohol policy and insisting on a drug and alcohol test, the supervisor permitted Michalski to drive home.

Defendant contends that none of these individuals are "comparables" because, prior to plaintiff, no individual had both refused to submit to the drug/alcohol test and who had come to work while under the influence of alcohol. Though defendant recognizes that Szymanski is close, defendant asserts that after an investigation, defendant "determined that Mr. Szymanski had not been under the influence of alcohol or drugs but was suffering from emotional problems." (Doc. 30 at 13.) Thus, according to defendants, Szymanski is not a comparable because he did not arrive at work under the influence of alcohol and refuse to submit to a drug test.

---

[4]

In the case of consumption/use during working hours, defendant's written drug and alcohol policy states: "Use of alcohol, marijuana or any of the illegal drugs on company property or the possession thereof, shall be grounds for immediate discharge." (Doc. 28, Ex. D at 2.)

15

I disagree. Szymanski is a comparable. Szymanski refused to submit to a drug and alcohol test after defendant suspected him of being under the influence. That defendant claims it later somehow – without having administered the mandatory test – determined that Szymanski was not under the influence would not necessarily keep a reasonable juror from concluding that the defendant treated plaintiff different due to his race.[5]

Furthermore, the simple fact that defendant required plaintiff to take a drug and alcohol test is evidence of disparate treatment. Defendant's application of its drug and alcohol policy was scattershot at best. Michalski, Gilley, Tinney, and Papac, four comparable, non-minority employees whom defendant has either caught in possession of alcohol and drugs on company premises or under the influence of alcohol or drugs during work hours, were not required to submit to testing. Plaintiff, however, was required to do so.

Thus I find that plaintiff has identified non-minority comparables who were treated differently for the same or similar conduct, and thus has set forth a prima facie case of discrimination.

### c. Legitimate Business Reason

Plaintiff has made out a prima facie case of discrimination based on race. Once an employee has set forth a prima facie case of discrimination, the burden shifts to the employer to produce a legitimate, non-discriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802.

---

[5] I note that Szymanski entered into a Stipulation of Understanding which stated that the defendant waived its right of discharge despite Szymanski's "violation of Shop Rules #27 (sleeping during working hours); #23 (<u>under the influence of any</u> narcotic, depressant, stimulant, hallucinogen, <u>alcoholic beverage</u>, or marijuana while of [sic] Company premises or during working hours, and #14 (insubordination – refusal to submit to drug/alcohol test). (Doc. 35, Ex. 6 at 2 (emphasis added)).

Defendant contends that it fired plaintiff because he came to work under the influence of alcohol and refused to submit to a drug and alcohol test. I agree that these are legitimate business reasons for terminating plaintiff. *See, e.g., Martin v. Barnesville Exempted Village Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 (6th Cir. 2000) (finding that defendant's reason for rejecting plaintiff's bids for a position because he was previously caught drinking beer during work hours was a legitimate, non-discriminatory reason for its actions).

### d. Pretext

Because defendant has produced a legitimate, non-discriminatory reason for its actions, the burden shifts back to the employee to show that the reason(s) produced by his employer were merely a pretext for the race discrimination. *McDonnell Douglas*, 411 U.S. at 804-05.

A plaintiff may establish pretext by showing that the reason offered by the defendant: 1) has no basis in fact; 2) did not actually motivate the decision to terminate plaintiff, or 3) was insufficient to warrant the decision to terminate plaintiff. *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 258 (6th Cir. 2002) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

In this case, plaintiff has raised a genuine issue of material fact as to whether defendant's proffered reason was a pretext for discrimination. Defendant's proffered reason appears to have been, based on prior practice with regard to the above designated non-minority employees, insufficient to warrant termination. Plaintiff has presented evidence of incidents in which defendant chose to not enforce its drug and alcohol policy. Despite having knowledge that ceratin non-minority employees were under the influence of alcohol

or drugs or in possession of alcohol or drugs, defendant allowed those non-minority employees to go home without administering a drug and alcohol test.

Evidence has also been presented that non-minority employees, who have reported to work while under the influence of alcohol, have been reinstated after entering into Stipulation of Understanding agreements. One non-minority employee (Szymanski), who refused to submit to a drug and alcohol test after suspicion that he was under the influence, was also reinstated.

Plaintiff and his union representative asked that he be sent home, but defendant refused to grant him, as it had non-minority employees, that leniency. At his termination hearing, plaintiff and his union representatives asked that plaintiff be permitted to enter into a Stipulation of Understanding; unlike other non-minority co-workers, he was not given that opportunity.

Defendant contends that it refused to offer plaintiff such concessions because he also refused to submit to a drug and alcohol test. In light of the evidence demonstrating defendant's failure to enforce its own policy to require those suspected of being under the influence to submit to a drug and alcohol test, defendant's reliance on the test and its importance could be found to have been pretextual.

Though plaintiff contends that there was no reason for the test because he had already admitted to being under the influence of alcohol, I disagree. A uniformly administered drug and alcohol test provides objective data that can confirm or refute likely intoxication.

Thus, while defendant may justifiably terminate an individual who has reported to work while under the influence of alcohol and refused to submit to a test, defendant may do so only if its drug and alcohol policy is applied equally, regardless of race. *See, e.g., McDonnell Douglas*, 411 U.S. at 804 (noting that

evidence of non-minorities being treated differently than minorities is "[e]specially relevant" to the issue of pretext; an employer "may justifiably refuse to rehire one who was engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to members of all races.") Based on the record before me, a rational juror could find that the defendant has not applied its drug and alcohol policy in a uniform manner

.

### e. Discharge in Violation of Public Policy

Defendant contends that plaintiff has also asserted a state law claim for discharge in violation of public policy and that his claim fails because plaintiff has an adequate remedy for any alleged wrong he may have suffered pursuant to R.C. § 4112.02 et. seq.

Plaintiff did not oppose defendant's contentions, and for good reason. A review of plaintiff's complaint reveals that plaintiff has not asserted any claim that his termination was in violation of Ohio public policy. For this reason, defendant's motion for summary judgment on this issue is denied as moot.

### Conclusion

In light of the foregoing, it is

ORDERED THAT:

1) Defendant's motion to strike portions of Raymond Garcia's affidavit be, and the same hereby is, granted in part and denied in part. Defendant's motion is granted as to the fifth sentence in paragraph 5, the first sentence of paragraph 8, and paragraphs 10 and 14 in their entirety, but otherwise denied.

19

2) Defendant's motion for summary judgment be, and the same hereby is, granted as to plaintiff's claim for disability discrimination and otherwise denied.

So ordered.

/s/James G. Carr
James G. Carr
Chief Judge